Attorney Terrence Perry for the appellants. May it please the court, we are here today on the sua sponte grant of summary judgment to Ravalli County in the federal district court in Montana. As the record demonstrates, the appellants had moved for summary judgment on their civil rights claims and associated state law claims arising out of what they contend to be unconstitutional acts and omissions on the part of Ravalli County in processing their subdivision applications. As a preliminary matter, I know that this court has pointed our attention to the Dressel case, and I did want to address immediately concerns obviously inherent in that opinion. At issue in this case are property and liberty interests. One of the seminal components of the liberty interests in this case is the ability of the appellants to engage in and pursue gainful occupation. The appellants are residential subdividers. It is their lifeblood. That's what they do for a living. As the Supreme Court has noted, unreasonable restrictions on their ability to engage in their occupation is subject to and associated progeny. The other property interest at issue in this case are the fees that were paid to the county, aside from the substantial investments monetarily in the preparation of and the filing of the applications for these subdivisions. As the affidavits of the appellants indicate in evidence, approximately $125,000 was expended by these appellants in order to comply with existing regulations in effect in the state of Montana at the time they filed their applications. Was there any restriction at all prior to the adoption of the two-acre rule? In other words, at the time your clients filed for the permit application, what was the rule with respect to minimum lot size? There was no rule. There was absolutely no rule. And when they filed, they obviously relied upon that. And with respect to that issue, the Montana Subdivision and Platting Act, unlike the unfettered discretion in Gagliardi and some of the other cases that were referenced by the opinion of this Court in Dressel, there was substantial limitations on the ability and the process associated with the review of subdivisions in Montana, whether under the 2003 Act or the amended 2005 Act. Counsel, when you say there was no rule, I take it what you're saying is that in Montana until this was done, you could make your lots as small as you wanted or as large as you wanted. Is that correct? In this county, you could. And the county couldn't do anything about that. Is that correct? That's correct, Your Honor. They couldn't take that into account in deciding whether to approve the subdivision or not. So you said, look, you know what? I'm going to have 30 by 30 lots, and I'm going to put up little tiny houses, and they couldn't have done a thing about it. Is that correct? I would not agree with that, Your Honor. I would not agree with that, Your Honor. It would not be correct. Okay. So what could they do anything about in terms of size of the lots? Under the statutory framework set forth in Title 76 of Montana Code, annotated whether revised or prior to 2005, there were articulated a number of criteria that had to be evaluated by any county in determining whether or not to approve a subdivision. There was some discretion, obviously, associated with this process. However, unlike many of the cases that are referenced in the Dressel opinion, it was in no way unfettered. There were strict guidelines that had to be followed. That's my question. I hear what you said. What would keep them from, under the laws that existed before, you said they could not exercise their discretion, or they must, or they couldn't, or I'm not sure what you exactly said, on my 30 by 30-foot lot? Make it 40 by 50, if you like. It would be considered amongst the six primary criteria for subdivision review, and obviously What would that be? Public health and safety, Your Honor. Public health and welfare, if it were What are the other criteria? Effects on wildlife and wildlife habitat. The criteria that were articulated really went to, you know, effects on agriculture, agricultural water use. It was a process that So a small lot would have a great effect on habitat, on wildlife habitat, but a large lot would not? Is that what you're saying? Case by case determination, Your Honor. Oh, I see. Okay. So they could make a case by case determination. Could they have said, You know what? This guy wants 100-acre lots. We're just not going to go for 100-acre lots. We think doing that will develop too much land, take it out of agriculture, blah, blah, blah, blah, all kinds of things like that. Could they have said that? They could have said that, Your Honor. That's true. I mean, there is discretion in the process. I do not deny that there is discretion in the process. However, the discretion is not unfettered. The regulations mandate a number of functions that they must perform in evaluating a subdivision. There must be public input. There must be an evaluation of the impacts not only on agriculture and agricultural water use, but the statutory framework mandated a review that included element review, a final determination within 60 days of the determination that the application was sufficient. Well, aside from the timeline, I guess I'm still having a little trouble understanding what's changed other than now the voters of this county or Mont... Was it a county vote or it's a state vote? It was a county vote, Your Honor. Okay. The voters of the county decided to put a constraint on the discretion. Isn't that correct? They said now the minimum has to be two acres per residence? That's correct, Your Honor. Before the change under the 2005 versions to follow on Judge Fernandez's line of questioning, could they have arrived, could the Planning Commission arrive so long as it complied with all the procedures that you're invoking? Could it have arrived at that same decision on a case-by-case basis? I would say no, Your Honor. Under the enabling statute, Title 76, they would have lacked authority to do that. The commissioners themselves could have adopted that in compliance with public notice, public hearing, public input, that type of thing. What is most troubling in this case is the retroactive nature of the two-for-one bylaw, which has been called colloquially. These applicants filed their application. Months later, this statute is enacted or this density bylaw is enacted. It is applied retroactively to their applications. State law, both before 2005 and after 2005, absolutely bogged down this as a matter of law in the State of Montana. Bogged what? The application of any regulations that are enacted after the time of the filing of the application. Okay. But I'm still trying to understand, what is it about the enabling law that prevented them from having a two-for-one decision in a particular subdivision application? In terms of the 2005, before the two-for-one bylaw came in, what prevented the commissioners from making that decision in a particular case, exercising the discretion that was allowed them at the time? In that circumstance, if the commissioners were to seek to enact such a bylaw, obviously would have to go through the I'm not talking about a bylaw. My understanding is there's a subdivision approval process that you wanted them to comply with. Okay. Now, if the subdivision application had, did not, let's suppose they say, we will not approve your application unless you restrict the lot sizes to the two-acre, to a two-acre minimum limitation. Could they have done that in a improving your clients? Assuming they're complying with all of the procedures, that's the decision they come to. If there had been evidence adduced that it was rationally related to a permissible governmental interest to protect the public health and welfare of the residents of Ravalli County, yes, although there would be a constitutional problem insofar as no other subdivision, aside from the one, the hypothetical you've described, had ever been subjected to that type of limitation. You're talking about equal protection? I am, Your Honor. And in this particular situation, there are inherent in the county's conduct serious equal protection issues here. As we know from the record, although these applicants Have you pled on an equal protection claim here? Yes, Your Honor. It was pled in the complaint and incorporated by reference into all of the 1983 claims, Your Honor. What happened in this situation was that the county essentially sat on the applications. It's clear what they did. They sat on the applications. Understand whether you have a remedy. A constitutional, a federal remedy, a federal constitutional remedy. That's what you have to show. And that's why I'm here, Your Honor. What about your relief under state law? Do you have no remedies under state law? There is a remedy under state law, which was also pleaded in the federal action, Your Honor, under 76-3. I understand. And the district court declined supplemental jurisdiction. That's correct, Your Honor. Okay. And what would that relief have been if you pursued it in state court? It would have been essentially coterminous with the relief available under 1983, Your Honor. It would have been damages. But we did also plead the federal claims. No, I know you did. All of which were dismissed. And the procedural history of this case is a little odd insofar as the appellants here filed a motion for summary judgment. The defendant never did. And we got to a hearing and essentially the trial judge induced the defendant to orally move for summary judgment. There was no notice. There was really no opportunity to oppose the motion because it was never briefed. However, it was granted. And several hours later, we receive a 30-page opinion from the trial judge throwing out the entire case. Counsel, let me ask you about your takings argument. You refer to Penn Central in your briefing. Did the trial judge make any kind of a Penn Central analysis in this case? Not to my recollection, Your Honor. And no, there was no analysis undertaken on the takings claim, to my recollection. His evaluation, I could be mistaken, Your Honor. It could have been touched upon by the trial court. My memory may fail me. But his central evaluation was obviously, do you have a protectable liberty or property interest under the United States Constitution? He found that the appellants did not. I suggest that that was manifest error in light of the fact that one of the fundamental interests that these appellants possessed was the right to pursue a gainful occupation. Now, true it may be that the subdivision process, had they gone through it, may have resulted in denial. But that is really not the litmus test. The test is whether or not they were deprived of their right to pursue a gainful occupation. They were deprived of that right in an arbitrary and capricious manner by application retroactively of the density bylaw, which they could never have foreseen in so far as it was not a regulation at the time they filed. You're saying that they can't proceed with the subdivision that has meets the two for one rule? That's correct, Your Honor, because the practical realities are these are two small subdividers. This isn't a major Fortune 500 company. They have their life savings in these two projects. For them to go back to re-engineer it, as one of the affidavits, Affidavit of Mark Barteau indicates, would cost substantial sums of money. They don't have that money. So when this county decided to retroactively apply this density bylaw, they basically effectively took all of their money from them that they'd invested in this project, including all of the filing fees that were not insubstantial. And these individuals were told months after they filed their application, months after this county had failed to timely process their applications in strict compliance with state law and their own regulations, you can't go no further because you no longer comply with the newly enacted zoning bylaw. And getting back to the liberty and property interests, certainly there is the fundamental interest, which is subject to strict scrutiny to pursue a gainful occupation. Secondarily, we have interests in the money that was expended. That's property. They spent real money to file these applications, including the filing fees. That money is gone forever now. The county has effectively taken that money from them. The appellants also had a statutory entitlement to the regulations in effect at the time of their filing. And in point of fact, under state law, as referenced in our brief, only those regulations could be applied to these applicants. They had a statutory entitlement to the application of those regulations. That is a property interest. Lastly, turning to Shelley v. Kramer and its progeny, the right to own, enjoy, dispose of real property is another fundamental right, which doesn't have its font under state law. One of the issues in this case has been the trial court and my brother are of the opinion that for the appellants to have a property interest, it must be a creature of state law. Obviously, that is not the case. The right to pursue a gainful occupation is both a liberty and a property interest under United States Supreme Court case law. The right to own property under Shelley v. Kramer, that's a fundamental right as well. Lastly, the Dressel case, which obviously we reviewed in preparation for the hearing today, it's in opposite. In Dressel, there was no fundamental right at issue. There was no right to a gainful occupation. It was not at issue. There was no property interest in monetary sums that had been expended. The individuals in Dressel sought to assert a property interest in the enforcement of regulations. That was to protect the investment in their neighborhood and their homes, right? It's a historical district. Yes, Your Honor. However, in terms of the quantification of the value of that right, to a large extent, incalculable. Calculable in this case, however, we know how much these individuals spent to file these applications to prepare these. They cannot get that back through the state lawsuit. You could, Your Honor. You could get it back through the state lawsuit as well as the 1983 claims, obviously, that have been asserted. However, I think what is critical in regard to comparing this case to Dressel and Gagliardi and some of the other cases referenced by the court, there was no unfettered discretion here. There were strict guidelines that the county had to follow in determining whether or not this application, these applications should be approved. Thank you, counsel. Your time has expired. Thank you. We will hear from the county. May it please the court. I'm Richard Larson, and I'm representing Ravalli County, Montana, in this action. I also read the Dressel case at the suggestion of this panel, and I can find nothing in that decision that is inconsistent with the analysis Judge Malloy applied to this case. What the district court here seemed to focus on was whether or not there is a constitutionally recognized property interest, not some property interest, not some state claim-related interest, but a constitutional interest that any of these now plaintiffs, in this case appellants, could articulate. That was the question the judge posed to the appellants at the oral argument on summary judgment. And through that period of time, they were unable to convince the district court that there was a constitutional dimension to what they were talking about. And part of the reason was, as this court pointed out in Dressel, there is some actual formulation. I think that the terminology that was used in Dressel is a conventional analytic framework for determining whether there is a constitutionally recognized property interest. And these plaintiffs weren't able to establish that in a district court. I don't think they've been able to establish it in their appeal to this court. What do you make of the facts of this case? In Dressel, it was, as counsel pointed out, it was homeowners who were upset because the permitting process wasn't being adhered to. And their concern, obviously, was that the historic character of their neighborhood wasn't being preserved by allowing somebody to come in and build a student dorm, in effect. But in this case, there are, at least part of their claim seems predicated on the notion that they undertook to develop this property. There was a regime that they adhered to, which mandated certain steps taken by defined amount of time, and that they could, in effect, rely on those steps being taken so that they would get at least an up or down decision within a predictable amount of time. I read some of their argument to be that they've essentially been deprived of their money, their investments, everything, by being slow walked through a process that is supposed to happen on a scheduled basis. Now, today, we've heard a little also on the substantive decision that they thought or think that they could have obtained out of that process. But just in terms of the procedural steps alone, why don't they have a protectable interest in being treated, according to law, in processing the claim? And if they do, why doesn't that generate some constitutional right? Well, I think that, as I look at it, at least, the process that had been begun in Ravalli County had just been begun with these plaintiff developers. In other words, they had submitted a preliminary plat, each of them, different plats, for approval. That's part of the process. Now, normally, and the way that the statute requires now and then, and the way that Ravalli County's own regulations expect it, is that that would first get a kind of superficial review to see if it appeared that all the paperwork was there. That's a complete misreview. And there was a time frame for doing that. And then there is sort of a sufficiency review, which involves the planning department looking at the information that the developer has provided. And then after that process, you go through a separate independent review by the state of Montana, the environmental quality people, for sanitation and subdivisions. Does this plat, does this plan adequately protect groundwater, other sources of water, or roads? You're just describing the typical process. Right. I'm troubled by the same concerns, plus the retroactivity feature. When did the ballot measure become noted during this process? In other words, when the application was filed originally, the ballot measure had not passed, correct? Right. It had been in process, but it hadn't gone to the election yet. To what extent was it noticed to the public at the time they applied for the permit? Well, the statement of undisputed facts that was submitted on behalf of the county mentions that to some extent to the district court. The district court mentioned in his decision. It had been an ongoing process for a couple of years in Ravalli County. It was a highly controversial public initiative to try to rein in a development process that many people in the community and in the county felt had kind of gotten out of control. These developers are residents of Ravalli County by their suggestion. They've never conceded, admitted, or even wanted to go there about what they knew or maybe expected would happen in this election. They've submitted their applications for these particular developments a matter of several weeks or maybe as long as a month or so before the election. But this was after about a two-year process of highly politicized discussions should this pass. So I think there is that distinction in that how far along were they? They were nowhere near to getting to a point in time or a point in the review process where the planning people from the county or the county commissioners themselves would be saying to these developers or any developers, you know, you've got a green light, tweak your plan a little here or there, we'll approve it. They were very early in the process. What Judge Malloy recognized and what I think the Dressel decision points out is what this kind of a claim does or would do is simply federalize local decision making on, in this case, zoning. It is accurate that they didn't, that the county did not follow the timeline set forth in the state law. It appears they did not. That's true. Well, appears or they didn't? Well, no, I. It appears. I mean, it looks like it to me. But what do you mean by using that word? Well, I would say for purposes of the argument that they didn't. So they did not. Right. And had they, and you said a couple of weeks or a few weeks, had they been going through the normal process, would the process time have run out before this zoning ordinance was adopted? It would have depended on what they decided. If they had made a decision on the sufficiency review that the provided information was insufficient, they would have kicked it back to the developer who would have had to do more work. Let me put it this way. You said a few weeks and I've got, it could take 60, the state asymptote was 80 days. Did they put it in more than 80 days before the zoning ordinance was decided or less? I think with respect to maybe two of these three, they would have been within that timeframe. I'm not absolutely sure. But again, that would assume that there was a decision made about sufficiency or completeness. That was not done. And I'm not saying that that was right. And that's the other part about the Dressel decision that I think is important today. Because this court noted in Dressel that the neighborhood people in that case may in let down by the city of Spokane, which evidently had not required the Dressels to comply with the historical area requirements. That would have given them a state law claim. Same is true here. In your understanding of how the county's rules worked before and how state law worked, were they able to, could they have looked at the subdivision and said, you know what, in light of all the other stuff that's going around it and the need to save agricultural land and et cetera, et cetera, et cetera, even without the zoning, we're not going to allow this subdivision to be at more than one per two acres. I'm sorry, I may not have caught all of that. Could the county commissioners have expanded or limited lot size even before the zoning ordinance was passed? So they could say your lot size is too small or it's too big in light of our view of how the law works here. Certainly. And there are other ways that those sorts of matters come into play without regard for the two for one ordinance. Sanitation and subdivisions. If you have a certain rural subdivision, for instance, you're probably not going to have access to a sewage system. You're going to have to use some method like, you know, a drain field. You're going to have to have a septic system. There are certain requirements for how big of a drain field you need, depending on how many people are using the facility. So a fourplex is one requirement. Single family residence is something else. Well, so all those things come into play. These folks were asking for what size lot size? I'm sorry? They were asking for what lot size? To the lot size? On their subdivision. Apparently what broke the back was the two acre requirement. What were they asking for? I'm sorry, I couldn't hear that. What were lot size were they asking for? In their initial? Yes. In their application? Yes. I have no idea. Okay. I can tell you that, just for clarification, this was an interim sort of emergency zoning requirement, the two for one as it's called. It has expired by its own terms in the fall of 2008. Ravalli County does not now have a two for one categorical requirement for subdivisions. What does it have? They don't have a categorical requirement that I'm aware of. In other words, it could be approved today? Absolutely. Well, there's something we're missing here. Why are we in court then? Well, and that's one of the things that Judge Malloy, I think, wondered too, you know, that the reality is that the plaintiffs in this case, at least the ones remaining, initially there were a great number of plaintiffs, the original heading on this case. Many of them have resolved their differences in various ways, settled with the county, chose to comply with the two for one requirement or whatever. These are all independent developers? Is that the idea? People that had subdivision requirements pending. Okay. Who were all subject to the citizen passed ordinance, the two for one. And these three stayed with the course in federal court, insisting they have a constitutionally recognized right to get something out of this case. And that was a choice they made in lieu of going to state court with a writ of mandamus request, directing the county to accept their applications and handle them under the old law without the two for one. What would the chances of their getting a remedy out of state court be? Well, I think, in my judgment, not bad. I mean, mandamus under Montana law, you need to show that there is a local government decision that is not discretionary. They couldn't have gotten mandamus on approval of their application. Well, couldn't that be converted into a constitutional right in that case? I don't think so. I think what they could have done with mandamus is pointed out the statutory framework for review, the timelines for review, and asked the district court in Montana, state district court, to direct the Ravalli County commissioners to evaluate and process the subdivision applications consistent with those statutory timelines. I think it would have been hard for the county to avoid that. Yeah, so we've been talking due process most of the time. What about the takings claim? Did Judge Malloy do a Penn Central analysis here? I think what Judge Malloy said on the takings claim is that, as he understood it, and I think it's a fair assessment, the takings claim is not a conventional you ruined my property. It's you have somehow, the county has, put the economic development of these subdivisions on hold by the citizen enactment two-for-one requirement, and therefore, as they phrased it, this land is lined fallow or fallow for the period of time that the litigation's been going on. Well, Judge Malloy said that's a litigation expense. That's what happens when you bring a suit. Well, Penn Central deals with investment-backed expectations, and I thought it was curious that there was no analysis made on that level. Well, I can't speak for the judge, obviously, for Judge Malloy. I don't know why he chose to approach it the way he did, but I think he also pointed out. But the issue was preserved, was it not? Penn Central is all through the blue brief here. Well, again, I think what the judge pointed out is that, you know, that there was not a, as he viewed it, there was not the kind of event that would constitute a taking in a constitutional sense in this case. Thank you, Counsel. Your time has expired. The case just argued will be submitted for decision, and the Court will adjourn.
judges: O'scannlain, Fernandez, Fisher